Copies Mailed
Chambers of Edgardo Ramos

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: August 6, 2020

UNITED STATES OF AMERICA,

– *against* –

MARK DAVID,

Defendant.

**OPINION AND ORDER**

12 Cr. 214 (ER)

RAMOS, D.J.:

Mark David ("David") is currently serving a sentence of 190 months' imprisonment at FCI Loretto, a low security prison in Pennsylvania, and is scheduled to finish his sentence on May 21, 2026. Before the Court is his motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking reduction of sentence to time served, or early release to home confinement.[1] Doc. 502. The Government opposes the motion. For the reasons set forth below, David's motion is DENIED.

## I. BACKGROUND

### A. Prior Proceedings

On June 20, 2012, a grand jury in the Southern District of New York returned a Superseding Indictment S1 S12 Cr. 214 (ER) (the "Indictment"), charging David and nineteen co-defendants with conspiring to distribute more than 280 grams of crack cocaine, and more than 50 kilograms of marijuana from 2001 up to 2012, in violation of 21 U.S.C. § 846. *See* Doc. 18. The Indictment further charged David and ten of his co-defendants with the use, possession, and

---

[1] David also moves for his release under the BOP Policy Statement 5050.50, which provides guidance concerning the BOP's review of compassionate release applications. As David acknowledges, however, the BOP Policy Statement 5050.50 is for the BOP and this Court is not bound thereby. In any event, David's motion thereunder is denied for substantially the same reasons because the Policy Statement, similar to § 3582(c), requires consideration of factors such as "[n]ature and circumstances of the inmate's offense" and "[d]isciplinary infractions."

discharge of firearms during and relation to that conspiracy, in violation of 18 U.S.C. §§ 924(c) and 2.  On January 29, 2014, David pled guilty pursuant to a plea agreement to a lesser included offense of Count One, and Count Two.[2]

According to David's pre-sentence report, he was one of the *de facto* leaders of a violent Yonkers street gang named the "Strip Boyz." (PSR ¶ 31).  At the time, shootings and fights took place regularly as part of a gang warfare between "Strip Boyz" and rival gangs that plagued the streets of Yonkers from 2005 to 2011.  (PSR ¶¶ 36–37).  David's influence stemmed principally from his willingness to commit shootings and other acts of violence in support of the gang.  (PSR ¶¶ 31, 35–36, 38; *see also* Doc. 365 ("the Government's sentencing submission"), at 2–5 (detailing a number of shootings and other acts of violence that David engaged in).  David was also a prolific drug distributor, routinely selling gram quantities of crack cocaine, beginning in 2002.  *Id*.  David later traveled to Pennsylvania with two of his co-defendants, where he began selling crack and heroin they brought from Yonkers.  *Id*.  According to the Government, the evidence against David included a substantial amount of drugs seized from his residence outside Pittsburg in early 2012.  Furthermore, before his arrest in this case, David had two state convictions for firearms possession, along with one for marijuana distribution.  (PSR ¶¶ 56–58).

David was sentenced on December 23, 2014.  *See* Doc. 381 ("Sentencing Tr.").  During sentencing, the Court noted that David involved himself with "incredibly dangerous and reckless activities," and that he was "very lucky not to be…facing a murder charge." *Id*. at 26:19–21, 27:7–12.  While imposing sentence, the Court also noted David's criminal history, the fact that he held some influence over his co-defendants, and in particular, his decision to engage in

---

[2] According to the Government, although David's plea agreement included a waiver of his right to seek a modification of his sentence pursuant to 18 U.S.C. § 3582(c), the Government is not seeking enforcement of that provision.

criminal conduct despite a far greater degree of family support than his co-defendants. *Id*. at 25–26. This Court ultimately sentenced David to 190 months' imprisonment,[3] above the 180-month mandatory minimum, but below the Guidelines Range of 198 to 217 months. *See generally id*. Judgment was entered on December 29, 2014. Doc. 370.

On May 11, 2018, David petitioned under 28 U.S.C. § 2255 to vacate the 120-month sentence imposed for the § 924(c) count. Doc. 478. Specifically, David argued that his sentence under § 924(c) was unlawful because that section did not state an offense against the United States—rather, it simply describes a penalty enhancement. On April 15, 2020, the Court denied his petition as time-barred in accordance with the one-year statute of limitations under § 2255. *See* Doc. 501, at 1–2. The Court further found that even if the petition was not time-barred, it was entirely without merit because § 924(c) "defines a complete offense," *see Dean v. United States*, 556 U.S. 568, 572 (2009), and is not a mere penalty provision. *Id*. at 2.

### B. The Instant Application

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. On March 26, 2020, Attorney General William Barr issued a memorandum in which he directed the Bureau of Prisons (the "BOP) to prioritize the use of home confinement as a tool for combatting the dangers that COVID-19 poses to vulnerable inmates, while ensuring its obligation to protect the public. *See* Doc. 502, at 37–38. In another memorandum dated April 3, 2020, the Attorney General reiterated his earlier guidance and further directed the BOP to give priority to the "most vulnerable inmates" at the "most affected facilities." *Id*. at 39–41.

---

[3] The sentence imposed consists of a 70-month imprisonment on Count One, and a 120-month imprisonment on Count Two of David's indictment, to run consecutively for a total of 190 months.

On March 31, 2020, David filed a request with the BOP for compassionate release based on his medical conditions. *Id*. at 21. On April 7, 2020, that request was denied. *Id*. On May 28, 2020, David filed the instant motion. As of the date of this Order, there have been 38 confirmed positive cases of COVID-19 at FCI Loretto, including 31 inmates and 7 staff members.[4] David claims that his medical conditions including asthma, heart ailments and high cholesterol, for which he is taking medications and undergoing constant treatment at the facility, put him at a higher risk of serious illness or death if infected with COVID-19. *Id*. at 7–8. David has also submitted affidavits from two health professionals (not his treating physicians) attesting to the risks of virus infection faced by prison inmates. *Id*. at 22–36. Lastly, David has attached letters from his mother Phyllis David, his older sister Amelia David, and himself, pleading for his release. *Id*. at 42–47.

On June 5, 2020, the Court received the Government's Opposition to the motion, along with David's medical and disciplinary record at FCI Loretto.[5] David's medical record confirms that he indeed suffers from asthma, an irregular heartbeat, and chest pain. David's medical record also indicates that he received routine medical treatment and prescriptions of medications for those conditions. On the other hand, his disciplinary record, containing fourteen infractions, is troubling. Less than two months ago and during the pendency of his compassionate release motion, David was disciplined for being disrespectful to a BOP staff member. Although certain of his infractions are minor, his record also includes an attempt to smuggle drugs into his facility in 2015, and possession of a hazardous tool in 2018.

---

[4] *See* https://bop.gov/coronavirus/ (last accessed August 6, 2020).

[5] The Court received the Government's opposition by email on June 5, 2020, which contained David's medical and disciplinary records, and its request that it be filed under seal. Therefore, David's request that the Government be deemed to have waived its response to his compassionate release motion on the basis that the Government failed to do so by June 5, 2020, as directed by this Court, is rejected. *See* Doc. 506 ("Notice of The Government's Waiver of Response").

On July 10, 2020, the Court received David's reply, in which he "clarifies" his past infractions, while highlighting his efforts at rehabilitation. Doc. 517. For example, David explains that the "hazardous tool" he possessed in 2018 was a cell phone he used to contact his family. *See id*. David acknowledges that he attempted to smuggle drugs into his facility in 2015, but contends that he has served all BOP punishments for that violation. *See id*. Finally, according to David, his most recent infraction for being disrespectful to a BOP staff is being appealed, and that David was "merely expressing his discontent with the medical staff for their failure to place any interest in his medical concerns." *Id*. David also points to his accomplishments at rehabilitation. They include completion of, among other things, a GED (student of the Month June 18, 2019), Non-Residential Drug Abuse Program Course, Victim Impact Program, and various "Turning Points" courses. *See id*. Lastly, David has attached to his reply, a letter attesting to the change he has undergone during his current incarceration written by his fellow inmate Joseph Duquesne, who purportedly was one of David's rival gang members. *See id*.

## II. LEGAL STANDARD

### a. 18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Crim. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted). A court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur: either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has

"fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Once a petition for compassionate release is properly brought before a court, its discretion is guided by the policy statement in U.S. Sentencing Guidelines § 1B1.13. *See id*. The Guidelines place two conditions on a determination of early release:

(1) There are extraordinary and compelling reasons that warrant the reduction; and

(2) a situation where "the defendant is not a danger to the safety of any other person or to the community."; and

(3) the reduction is consistent with this policy statement.

U.S. Sentencing Guidelines § 1B1.13. The Guidelines include as an "extraordinary and compelling reason" the existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id*. cmt. 1(A)(ii)(I).

When determining whether a prisoner is a danger to the community, section 1B1.13 refers to 18 U.S.C. § 3142(g), which in turn lists the following factors to be considered:

(1) The nature and circumstances of the offense charged…;

(2) The weight of the evidence against the person;

(3) The history and characteristics of the person…; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of

imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## III.   DISCUSSION[6]

### A. Application of § 3582 to David's Case

The Government does not dispute that David's medical conditions constitute an "extraordinary and compelling reason" under § 3582 in light of the ongoing pandemic, but contends that the factors set forth in section 3553(a) counsel against his release. Specifically, the Government contends that the seriousness of David's offense, combined with his disciplinary violations while incarcerated, underscore the danger to public safety that David would pose if released and the need for further specific deterrence. The Court agrees.

In considering whether to grant relief pursuant to § 3582(c), courts are instructed to consider "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Here, "the nature and circumstances of the offense," are undoubtedly serious. 18 U.S.C. § 3553(a)(1). Contrary to David's self-serving assertion that he is merely serving his sentence for a "non-violent drug trafficking offense," Doc. 502 at 11, he had personally engaged in repeated acts of violence, including multiple shootings, and assumed a leadership position in a lengthy and violent gang war that consumed southwest Yonkers for the better part of a decade. His drug dealing alone was also significant, as he sold substantial amounts of crack and heroin. This Court noted at David's sentencing the seriousness and dangerousness of the activities that he had involved himself in.

Furthermore, while David's efforts at rehabilitation, namely his completion of various programs and workshops, are encouraging, his disciplinary record remains extremely

---

[6] It is undisputed that David exhausted his administrative remedies. David filed his request for compassionate release with the FCI Loretto's Warden on March 31, 2020, and it was denied on April 7, 2020.

7

concerning.  Contrary to David's assertion, possession of a cell phone is a serious BOP violation. Even more troubling is the infraction for attempting to smuggle drugs into his facility in 2015. Finally, David's prior criminal convictions failed to deter him from continued unlawful conduct, as he was quick to re-offend following his sentences.  Therefore, it is difficult to credit David's representation that he will not pose a danger to the public and that further deterrence is no longer needed.

To be sure, these are unusual times.  But as this Court observed in the context of a separate application, "just because there is a pandemic does not mean that the jailhouse doors ought to be thrown open."  *United States v. Nunez*, No. 20 Cr. 239 (ER) (S.D.N.Y. Apr. 10, 2020) (Ramos, J.).  Here, David received a sentence for serious and dangerous crimes, and his record since incarceration shows that further deterrence is needed.  Accordingly, his motion for compassionate release is denied.  *See United States v. Conley*, No. 19 Cr. 131 (PAE) (S.D.N.Y. Mar. 31, 2020) (Engelmayer, J.) (denying pretrial bail for inmate on high-risk list with asthma, partial lung removal, diabetes, high blood pressure, and hypertension because medical risks were outweighed by serious risk of danger to community).

## IV. CONCLUSION

For the aforementioned reasons, David's motion for compassionate release is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 502.

It is SO ORDERED.

Dated:   August 6, 2020
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.

8