UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   *against*

MARK DAVID,

   Defendant.

**ORDER**

12 Cr. 214 (ER)

---

RAMOS, D.J.:

  Mark David is currently serving a 190-month sentence at FCI Loretto, a low security prison in Pennsylvania, and is scheduled to finish his sentence on May 21, 2026. On August 6, 2020, the Court denied his first motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking reduction of his sentence to time served, or early release to home confinement. *See United States v. David*, 12 Cr. 214 (ER), 2020 WL 4530302 (S.D.N.Y. Aug. 6, 2020), *appeal withdrawn*. Before the Court is his second motion for compassionate release. Doc. 538. For the reasons set forth below, David's motion is DENIED.

## I. BACKGROUND
### A. Prior Proceedings

  David's underlying criminal case stemmed from his involvement with the Strip Boyz, a Yonkers street gang. *See David*, 2020 WL 4530302 at *1–2. The Court assumes familiarity with its August 2020 decision, which describes in detail his background with the Strip Boyz and prior proceedings in this case. David was convicted upon his plea of guilty to conspiracy to distribute cocaine and marijuana and the possession of a firearm in furtherance of drug trafficking. *See* Doc. 370.

B. **The August 2020 Order**

On August 6, 2020, the Court denied David's first motion for compassionate release. *See David*, 2020 WL 4530302 at *4. Because the government, at the time, did not contest that David's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ constituted an "extraordinary and compelling" reason for release, the Court only considered the application of the factors set forth under 18 U.S.C. § 3553(a), including "the nature and circumstances of the offense" and David's disciplinary record while in custody. *Id.*

The Court found that these factors weighed against release. *Id.* It observed that David had personally engaged in repeated acts of violence, including multiple shootings, and had sold substantial amounts of crack and heroin. *Id.* The Court also noted that he had attempted to smuggle drugs into a Bureau of Prisons ("BOP") facility in 2015, among numerous other disciplinary infractions such as prohibited possession of a cell phone. *Id.* at *2, *4. However, the Court also acknowledged that it was encouraged by the fact that David had completed various programs and workshops while in custody. *Id.* at *4. Ultimately, however, it found that the totality of circumstances showed that additional deterrence was needed, notwithstanding David's ▮▮▮▮, and denied the motion. *Id.*

C. **Circumstances Since the August 2020 Order**

David again moved for compassionate release on February 2, 2021. Doc. 537. David has cited several factors that have changed since the Court's August 2020 order. He first argues that FCI Loretto experienced a spike in COVID-19 infections this winter, and that ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Doc. 538 at 6–7, 10. He noted that, on the day the renewed motion was filed, he had been ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* March 18 Letter at 2; Ex. A to the

2

Government's March 18 Letter, Medical Records ("Ex. A"), at 13–16.[1] David also notes that ▮▮▮▮▮ ▮▮▮▮▮ put him at an increased risk for serious illness or death from COVID-19. Doc. 538 at 8–13. Regarding the § 3553 factors, David submits additional letters on behalf of himself and friends and family members. He also argues that the Court should consider the fact that his sentences were premised on state convictions for which he had served jail time, which could have provided a basis for a downward departure motion under U.S.S.G. § 5K2.23. *Id.* at 14. David urges the Court to consider this factor in its equitable discretion.

Since David's motion was filed in February, the parties have also filed several letters providing updates on David's condition, many of which have been redacted or filed fully under seal. On the night of March 10, 2021, ▮▮▮▮▮

▮▮▮▮▮

---

[1] These medical records were filed under seal on March 18, 2021. Because several documents discussed in this motion were filed under seal or with heavy redactions, the Court refers to them by date for clarity.



## II. LEGAL STANDARD

### A.   18 U.S.C. § 3582

Although a court may not normally "modify a term of imprisonment once it has been imposed," there are certain limited exceptions, including "compassionate release." *See United States v. Roberts*, No. 18 Cr. 528 (JMF), 2020 WL 1700032, at *1 (S.D.N.Y. Apr. 8, 2020) (internal quotation marks and citation omitted).  Under 18 U.S.C. § 3582, a court may reduce a prisoner's sentence when it finds that there are "extraordinary and compelling reasons" that warrant such a reduction, but one of two conditions must first occur:  Either the BOP Director may move the court to release the prisoner; or, alternatively, the prisoner himself may move the court, but only after he has fully exhausted all administrative rights.  *See* 18 U.S.C. § 3582(c)(1)(A).

Prior to the First Step Act, sole authority rested with the BOP to determine what reasons, for purposes of compassionate release, are "extraordinary and compelling." *See* U.S.S.G. § 1B1.13 ("BOP Policy Statement"), Application Note 1(D).  However, the Second Circuit in *United States v. Brooker* recently determined that "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release."  *See* 976 F.3d 228, 237 (2d Cir. 2020).

The BOP Policy Statement includes as an "extraordinary and compelling" reason the

4

existence of "a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(ii)(I). It also permits the Court to consider whether the incarcerated person "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.* at § 1B1.13(2).

If the sentencing court finds that "extraordinary and compelling reasons" exist, it "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

### III. DISCUSSION

#### A.     David's Health Conditions

The government previously conceded that David's ▬▬ was an "extraordinary and compelling" reason for release based on CDC guidance stating that ▬▬ would increase one's risk of dire consequences from COVID-19. Doc. 540 at 6 n.2. The Court therefore assumed in its August 2020 decision that David's ▬▬▬▬▬ were extraordinary and compelling, and focused its analysis on the remaining § 3553 factors. *David*, 2020 WL 4530302, at *3. The government has since revised its position on David's ▬▬ citing revised CDC guidance that ▬▬▬▬ might, but will not necessarily, increase COVID risk. *See* Doc. 540 at 6 (citing People with Certain Medical Conditions,

5

Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 8, 2021)). In any event, because the Court has previously found that other factors counsel against release despite David's ▮▮▮▮, the question before the Court is whether David's recent health developments merit upsetting the Court's prior determination.

To the extent David focuses on his risk from COVID-19, the Court does not find this to be an appropriate reason to grant his motion. David's original motion already raised his ▮▮▮▮ and related issues, and the risk they would present were he to contract COVID-19. *See* Doc. 538 at 1 (citing David's original administrative request); *see also* Doc. 502 at 9–11 (referencing David's medical conditions, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). David has not shown that his ▮▮▮▮▮▮▮▮▮▮ have worsened since August 2020 so as to change the Court's assessment. Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While the Court acknowledges that re-infection is a possibility, it finds that this risk is mitigated by FCI Loretto's efforts to vaccinate inmates.[2]

However, David does cite new facts in his renewed motion and subsequent letters regarding ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Courts in this Circuit deciding compassionate release motions by individuals with ▮▮▮▮▮▮▮▮ have generally found that ▮▮▮▮▮▮▮▮ must "substantially diminish[] one's ability to provide self-care within the environment of a correctional facility" to merit compassionate release. *See, e.g.*, *United States v. Gotti*, 433 F. Supp. 3d 613, 619 (S.D.N.Y. 2020) (finding that a 79-year old individual with

---

[2] When the government submitted its response brief on February 8, 2021, FCI Loretto had fully vaccinated 65 inmates. Doc. 540 at 7 n. 5. As of the date of this order, that number is 350. *See* COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 13, 2021).

6

chronic Afib, hypertension, and several other serious health issues was able to manage his conditions in custody); *United States v. Rivernider*, No. 10 Cr. 222 (RNC), 2020 WL 597393, at *5 (D. Conn. Feb. 7, 2020) (defendant who was recovering from a triple bypass surgery had not shown that his ability to provide self-care was substantially diminished). Courts also consider whether the facility is able to provide appropriate care and management ████████ *United States v. Sattar*, 467 F. Supp. 3d 152, 155-56 (S.D.N.Y. 2020) (noting that there was no evidence that defendant's facility was unable to treat his high blood pressure and Afib).

David suffers from ████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████  ████████████████████████
████████████████████████  ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████
        ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████

---

[3] The government has indicated that it informed BOP's regional counsel of this incident, and that FCI Loretto leadership is conducting an investigation. *See* March 18 Letter at 1.



To be clear, the Court has no doubt that David experiences distressing symptoms from his ███████████████████████ However, he has not shown that FCI Loretto is unable to provide him with necessary care, or that he otherwise is unable to care for himself in the prison environment.  Indeed, this conclusion is consistent with other decisions regarding individuals with ██████████, including at FCI Loretto.  *See, e.g.*, *United States v. Allums*, No. 15 Cr. 153 (VSB), 2020 WL 5796265, at *7 (S.D.N.Y. Sept. 29, 2020) (denying compassionate release to individual at FCI Loretto with hypertension and asthma);  *United States v. Sattar*, 467 F. Supp. 3d 152, 158 (S.D.N.Y. 2020) (denying compassionate release to 60-year old defendant with high blood pressure and Afib when he had not shown that facility was unable to provide care); *United States v. Mack*, 17 Cr. 138 (KAM), 2020 WL 6161255, at *3 (E.D.N.Y. Oct. 21, 2020) (denying compassionate release to 33-year old with similar heart issues, and citing cases showing that compassionate release involving Afib is more common among older inmates).[4]

---

[4] David cites *United States v. White*, No. 09 Cr. 369 (CCB), 2020 WL 3960830 (D. Md. Jul. 10, 2020).  While the defendant in *White* was granted compassionate release from FCI Loretto, Judge Blake's decision indicates that the defendant suffered from two conditions that placed him at an increased risk of COVID-19 according to CDC guidance, and also that the defendant had incurred no disciplinary problems while in custody.  *Id.* at *3–4.

8

### B.     The Remaining Section 3553 Factors

David's primary argument regarding the remaining § 3553 factors is that the Court could have considered a downward departure at David's sentencing based on prior state sentences David had completed pursuant to U.S.S.G. § 5K2.23, had this issue been raised at his sentencing proceedings.  Doc. 538 at 14–16.  Under § 5K2.23, a Court may grant a downward departure if two conditions are met:  (1) a defendant has completed a term of imprisonment, and § 5G1.3(b) would have provided an adjustment had the term been undischarged.  Section 5G1.3(b) in turn permits a downward adjustment for undischarged state sentences if such sentences "resulted from another offense that is relevant conduct to the instant offense."  Thus, David seeks the Court's consideration of prior state sentences he has served, including one for attempted criminal possession of a weapon in the second degree.  *Id.* at 15–16.  David, however, acknowledges that that any challenge to the sentence itself would be procedurally barred.  *Id.* at 14.  And even if such a request had been made at David's sentencing, any departure would have been within the Court's discretion.  *See United States v. Boodie*, 590 F.App'x 67, 68 (2d Cir. 2015).

David's argument that such a downward departure could have been raised does not change this Court's determination that his sentence was appropriate.  At sentencing, the Court was aware of David's prior convictions and considered all relevant factors under § 3553(a), including David's history and characteristics.  Doc. 381 at 24:7–15.  This included David's criminal record at the time, which the Court found, as a whole, was a reason to "stay closer to the guidelines than [it] might otherwise want to do."  *Id.* at 25:7–10.  The Court also considered the serious nature of David's criminal activity, which it characterized as "incredibly dangerous and reckless."  *Id.* at 26:20–21.  Overall, it determined that David's 190-month sentence was

sufficient, but not greater than necessary. *Id.* at 27:23–24. The Court does not find cause to upend that judgment now.

David has also submitted additional letters from himself and friends and relatives, including his mother and children, as well as evidence that he has completed additional educational programming. *See* Docs. 538-4–8, 545-2–4, 552-1. These letters underscore the Court's observation in August 2020 that David has made encouraging efforts to better himself while in custody, and the Court emphasizes that these efforts have not gone unnoticed.[5] No doubt David's strong support network has also played a meaningful role. However, David's sentencing determination was decided with due consideration of his family support, as was his first compassionate release motion (which also considered his activities while in custody). Because his renewed motion focuses on developments with David's health, the Court does not find that the weight of the other § 3553(a) factors have been significantly altered so as to upset the Court's prior decision.

Finally, the Court notes that 18 U.S.C. § 3553(a)(6), the need to avoid unwarranted sentencing disparities, continues to weigh against release in light of the Court's denial of several compassionate release motions for David's co-defendants in similar circumstances. *See* Doc. 524 at 6–7 (denying compassionate release to a co-defendant based in part on violent offense conduct); Doc. 536 at 5–8 (denying compassionate release to a co-defendant based on ▇▇▇ ▇▇▇ when co-defendant had not shown that such condition could not be managed in the facility or otherwise diminished his ability to provide self-care).

---

[5] Several of the letters from David's family focus on his ▇▇▇ ▇▇▇. However, for the reasons discussed in Section III.A., David has not shown that FCI Loretto is unable to provide him with adequate care, or ▇▇▇

10

## IV. CONCLUSION

For the reasons discussed, David's renewed motion for compassionate release is DENIED. The Clerk of Court is respectfully directed to terminate the motion, docket number 537.

It is SO ORDERED.

Dated: April 13, 2021.
New York, New York

_____
EDGARDO RAMOS, U.S.D.J.