UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

– *against* –

MARK DAVID,

                Defendant.

**OPINION & ORDER**

12 Cr. 214 (ER)

RAMOS, D.J.:

Mark David is currently serving a 190-month sentence for conspiring to distribute narcotics and discharging a firearm in furtherance of that conspiracy. He is scheduled to finish his sentence on May 21, 2026. Doc. 502 at 2. Before the Court is the motion for compassionate release filed by David on December 15, 2025. Doc. 686. For the reasons set forth below, the motion is DENIED.

## I.    BACKGROUND

The Court assumes familiarity with the underlying facts of this case, as laid out in the Court's Opinion denying David's first motion for compassionate release filed on May 28, 2020. *See generally United States v. David*, No. 12-cr-214 (ER), 2020 WL 4530302 (S.D.N.Y. Aug. 6, 2020) (Doc. 519). The Court repeats the relevant details here for convenience.

David served as a *de facto* leader of the Strip Boyz, a large drug trafficking organization that distributed narcotics around Yonkers, New York between 2000 and 2012. (PSR ¶ 31). Before his arrest in this case, David had two state convictions for firearms possession, along with one for marijuana distribution. (PSR ¶¶ 56–58).

In June 2012, a grand jury in this district indicted David, along with nineteen other members of the Strip Boyz, in connection with their drug trafficking conspiracy. *See* Doc. 18. On January 29, 2014, David pleaded guilty to two counts pursuant to a plea

agreement— conspiring to distribute crack cocaine and marijuana, in violation of 21 U.S.C. § 846, and possessing and discharging a firearm during and in furtherance of the conspiracy charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  Doc. 250.

David was sentenced on December 23, 2014.  *See* Doc. 381 ("Sentencing Tr."). During sentencing, the Court noted that David was involved in "incredibly dangerous and reckless activities," and that he was "very lucky not to be…facing a murder charge" after firing a gun several times while participating in a violent gang war.  *Id*. at 27.  The Court also emphasized David's criminal history, his influence over his co-defendants, and, in particular, his decision to engage in criminal conduct despite a far greater degree of support from his family, who provided a more stable home life than his co-defendants enjoyed.  *Id*.  The Court ultimately sentenced David to 190 months' imprisonment—10 months above the 180-month mandatory minimum, but below the applicable Guidelines range of 198–217 months.  *Id*.  The sentence consists of 70-months imprisonment on Count One for conspiring to distribute cocaine and marijuana in violation of 21 U.S.C. § 846, followed consecutively by a mandatory minimum 120- month imprisonment on Count Two for possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Doc. 370.

In March 2018, David petitioned the Court pursuant to 28 U.S.C. § 2255 to vacate the sentence on the § 924(c) count.  Doc. 478.  David argued that the underlying statute, 18 U.S.C. § 924(c), did not actually establish an offense in its own right, and instead merely served as a sentencing enhancement.  *Id*.  The Court denied the petition as time-barred, and moreover found that it was without merit.  Doc. 501.

In May 2020, David filed his first motion for compassionate release in light of his health and the COVID-19 pandemic.  Doc. 502.  The Court denied his request, finding

that the 18 U.S.C. § 3553(a) sentencing factors counseled against early release.  *David*, 2020 WL 4530302, at *4.

In February 2021, David moved for compassionate release for the second time. Doc. 537.  David once again cited his health, arguing that his medical condition increased his risk of serious illness or death from COVID-19.  *Id*.  He also asked the Court to consider the prior state convictions he had received for similar conduct.  *Id*. at 14–16. The parties filed several letters concerning David's condition.  *David*, 2021 WL 1414982, at *1.  Generally, David's medical concerns center around his irregular heartbeat, asthma, COPD, and high cholesterol.  Doc. 519 at 4; Doc. 570 at 1.  On April 14, 2021, the Court rejected the request because David had not shown that his correctional facility was unable to provide the necessary care to address these issues.  *Id*. at *3.  Regarding the prior state sentences, the Court declined to retroactively credit the time he had served and grant a downward departure.  *Id*. at *4.  The Court reasoned that it was aware of the state convictions when it imposed the original sentence, and considered those convictions as well as all other relevant factors.  *Id*.  Finally, the Court underscored the need to avoid unwarranted sentencing disparities, noting the denial of compassionate release requests made by several of David's co-defendants facing similar circumstances.  *Id*.

On May 11, 2021, David moved for reconsideration of the compassionate release denial.  Doc. 570.  In the motion for reconsideration, David argued that the Court understated the gravity of his ailments when it denied his motion for compassionate release.  *Id*. at 2.  The Government responded on May 24, 2021, opposing the motion as meritless in light of the demanding standard for reconsideration.  Doc. 572. Subsequently, in a November 28, 2023 letter, David sought a sentence reduction pursuant to 18 U.S.C. § 3582(c) on the following grounds:  (1) the sentencing disparity between crack and powder cocaine; (2) updated sentencing guidelines; and (3) his time incarcerated on state convictions.  Doc. 621 at 1–5.  The Government responded on

January 30, 2024, reiterating its opposition to the earlier motion for reconsideration, and asserting that the subsequent motion for a sentence reduction is similarly meritless.  Doc. 633.  On September 5, 2024, the Court denied David's motion for reconsideration filed on May 11, 2021, finding that the motion was untimely brought and separately, that the Court adequately considered David's health ailments in its April 14, 2021 Order.  Doc. 658 at 6-7.  David's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c) was also denied therein.  *Id.* at 7-10.  The Court held that (1):  the § 3553(a) factors counseled against a sentence reduction; (2) there was no intervening change in law regarding the crack cocaine sentencing disparity; (3) David's original sentence still fell within the updated Sentencing Guidelines; and (4) the time David spent in state custody for the related offenses was considered during the initial federal sentencing.  *Id.*

On February 3, 2025, David filed a motion requesting the court to reconsider its September 2024 Opinion denying compassionate release, citing a desire to attend his son's graduation ceremony.  Doc. 673.  The government opposed the motion for reconsideration on February 18, 2025.  Doc. 676.  David withdrew that motion for reconsideration on April 23, 2025, stating that a change in Bureau of Prisons ("BOP") policy made his previous motion moot.  Doc. 683.

On December 19, 2025, David filed the instant motion for compassionate release.  Doc. 686.  Therein, David contends that a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1) is warranted for three reasons.  First, David notes that since he was relocated to a halfway house on June 3, 2025, he has been compliant with all of the requirements of the halfway house including breathalyzer and urinalysis tests, as well as the conditions of his home release on weekends.  *See* Doc. 686 at 1; Doc. 690 at 1.  David also states that during that time, he has been employed by Noblemen Transportation LLC, where he works from 8 a.m. to 6 p.m. five days per week.  Doc. 686 at 1.  Therefore, he contends that his daily interactions with society and his general compliance with the conditions of

his supervision demonstrate that he is no longer a danger to the community.  Doc. 690 at 1.  Second, David requests a sentence reduction so that he may attend night classes for HVAC training at the All-State Career school, which he is currently unable to do given the time restrictions of his parole.  *Id.*  Third, although he has "been feeling okay," David is troubled by the quality of the medical treatment he has received during his time at the halfway house.  *See* Doc. 686 at 1; Doc. 690 at 1-2.  Specifically, David raises three primary concerns with his medical care.  First, he had not met with a medical professional in eight months.  Doc. 690 at 2.  Second, his blood pressure evaluation was seven months overdue, and third, his medication had run out.  *Id.*

The government opposed the instant motion for compassionate release on January 23, 2026, arguing that despite David's assertion that he has filed twice with the BOP, he has failed to exhaust his administrative remedies, he is unable to demonstrate extraordinary or compelling circumstances, and that a sentence reduction is incompatible with the goals of sentencing as described in § 3553(a).  Doc. 676.

## II.    LEGAL STANDARDS

"Pursuant to 18 U.S.C. § 3582(c)(1) as modified by the First Step Act, a district court may reduce a term of imprisonment upon motion by a defendant."  *United States v. Fernandez*, 104 F.4th 420, 426 (2d Cir. 2024) (quoting *United States v. Halvon*, 26 F.4th 566, 568 (2d Cir. 2022)).  The compassionate release analysis is a multi-step process: "the district judge first determines whether extraordinary and compelling reasons exist to modify the sentence, and if such reasons exist, the court then considers the Section 3553(a) factors in evaluating what reduction, if any, is appropriate."  *United States v. Griffin*, No. 22-cr-408, 2024 WL 2891686, at *1 (E.D.N.Y. June 10, 2024).  "District courts may 'consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them.'"  *Fernandez*, 104 F.4th at 426 (citing

*United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020)).  The § 3553(a) factors that a court may then consider include:

> the nature and circumstances of the offense; the history and characteristics of the defendant, including age, being a non-violent offender, and remorse; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; the affordance of adequate deterrence; and the protection of the public from further crimes of the defendant.

A sentence reduction under 18 U.S.C. § 3582(c) must also be "consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Stokes*, No. 3-19-cr-307 (SRU), 2024 WL 216643, at *1 (D. Conn. Jan. 19, 2024).  "The applicable policy statement for compassionate release is found in U.S. Sentencing Guidelines [ ] § 1B1.13 and Commentary," as amended and effective November 1, 2023.  *Id.* at *2.  This update was "meant to accord with the First Step Act's purpose of increasing the use of sentence reduction motions under section 3582(c)(1)(A)." *United States v. Donato*, No. 03-cr-929, 2024 WL 665939, at *3 (E.D.N.Y. Feb. 16, 2024) (internal quotation marks and citation omitted).

The policy statement provides examples of what may establish an extraordinary and compelling reason:  "(1) a defendant's medical circumstances; (2) a defendant's age; (3) a defendant's family circumstances; and (4) abuse suffered by the defendant while in custody." *Id.* (internal citations omitted).  An unusually long sentence may also be a compelling reason, if the defendant has served at least ten years of the sentence, and there has been an intervening change in law that would create a gross disparity between the sentence being served and the sentence that would likely be imposed considering the intervening change in law.  *Id.* at *4.  The policy statement "also includes a catch-all provision authorizing the court to consider 'Other Reasons' that demonstrate extraordinary and compelling reasons warranting a reduction in sentence," where those other reasons are "similar in gravity" to the examples provided. *Id* at *3.  Thus, the

policy statement "affords the court significant discretion to determine when a reduction in sentence is warranted." *Id.*

A court may make such a sentence modification only:

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . .

*United States v. Saladino*, 7 F.4th 120, 123 (2d Cir. 2021) (emphasis omitted) (quoting 18 U.S.C. § 3582(c)(1)(A)).

## III.    DISCUSSION

In order to satisfy the requirements for a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), David must demonstrate that he has exhausted his administrative remedies, there are extraordinary and compelling reasons for reducing his sentence, and the § 3553(a) factors warrant a sentence reduction.  For the following reasons, David fails to meet this burden.

### A.  Exhaustion of Administrative Remedies

As a threshold matter, nothing in the record indicates that David has filed a motion for a sentence modification with the Director of the BOP, that he has exhausted his administrative rights to appeal the BOP's failure to bring a motion on his behalf, or that he has waited the requisite thirty days upon informing the warden of such a request. *See* 18 U.S.C. § 3582(c)(1)(A).  In response to the government's objections, David states that he filed a motion for sentence reduction with the BOP on two occasions.  Doc. 690 at 1.  However, according to the government, the BOP confirms that David has not yet requested the BOP to bring a motion for sentence reduction on his behalf, nor has he exhausted his administrative remedies with respect to any such request.  Doc. 689 at 4.

David acknowledges that he mistakenly believed that he could seek a sentence reduction from the Court directly and argues that the Court "retains the authority" to grant his motion even if administrative remedies have not been exhausted. Doc. 690 at 1. David's argument is incorrect as a matter of law. *See United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that "the exhaustion requirement is a claim-processing rule" and the district court may only review the merits of the defendants' motion for compassionate release should those administrative remedies be exhausted pursuant to § 3582(c)(1)(A) or the affirmative exhaustion defense be withdrawn by the government); *Bastek v. Federal Crop Insurance Corporation*, 145 F.3d 90, 94 (2d Cir. 1998) (explaining that, unlike common law or judicial exhaustion doctrine, "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them"). Given the government's representation that the BOP has not received a request for a sentence reduction on behalf of David, and the lack of evidence provided by David to the contrary, the Court finds that David is unable to demonstrate that he has adequately exhausted his administrative remedies as required by statute. *See* 18 U.S.C. § 3582(c)(1)(A); *U.S. v. Willy Sanchez*, No. 19-cr-360 (KMW), 2026 WL 878463, at *2 (S.D.N.Y. Mar. 31, 2026) (finding that the defendant failed to exhaust his administrative remedies where he could not provide proof of his alleged request to the BOP to bring a motion for sentence reduction on his behalf, and where the Warden denied receiving such a request); *United States v. Eliopoulos*, No. 19-cr-651-LTS-07, 2024 WL 1638550, at *2 (S.D.N.Y. Apr. 16, 2024) (noting that "a defendant bears the burden of showing that he exhausted his administrative remedies prior to filing a compassionate release motion with a court"). The lack of exhaustion alone provides a sufficient basis to deny the instant motion for a sentence reduction.

Nonetheless, as discussed below, even if David had exhausted his administrative remedies, the reasons proffered by David for a sentence reduction are unavailing.

**B. Extraordinary and Compelling Reasons**

A court may reduce a defendant's sentence if it finds "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission has identified six circumstances that, alone or in combination, may constitute an extraordinary and compelling reason. *See* U.S.S.G. § 1B1.13(b); *see also United States v. Morel*, No. 11-cr-1032-54 (PAE), 2024 WL 4751270, at *4 (S.D.N.Y. Nov. 12, 2024) ("The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated."). Two of the six potential circumstances are relevant here: "medical circumstances of the defendant", and the "catchall provision" for "other reasons." *Morel*, 2024 WL 4751270, at *4–*5.

*1. Medical Concerns*

In order for a medical issue to rise to the level of an extraordinary or compelling circumstance, the defendant must be "suffering from a serious physical or medical condition, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13(b)(1)(B). Alternatively, as relevant here, an extraordinary or compelling reason may also exist where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. 1B1.13(b)(1)(C).

David notes that he has received inadequate medical treatment during his time at the halfway house. Doc. 686 at 1; Doc. 690 at 1. Specifically, David states that from the time he entered the halfway house in June 2025 until December 2025, when he filed the instant motion for compassionate release, he was unable to meet with a cardiologist or have his blood pressure checked. Doc. 686 at 1. Though he was not experiencing any ill-health symptoms at the time, he sought to have a check-up. *Id.* David feels that removal

9

from BOP custody would enable him to obtain his own health insurance and receive improved medical treatment. *Id.* In his February 2026 response, David re-iterates that he had still not received a blood pressure check nor met with a medical professional during the eight months he had resided at the halfway house. Doc. 690 at 2. He also states that his medication had run out and was not being refilled at that time. *Id.*

In response to David's claims, the government notes that David was scheduled for an appointment with a primary care physician in early February 2026.[1] Doc. 690 at 4.

However, even if the medical care is indeed as inadequate as alleged, such deficiencies fail to meet the requisite standard for an extraordinary and compelling reason under U.S.S.G. 1B1.13(b)(1). David's medical concerns are more precautionary in nature, reflecting a desire to receive a wellness check-up as opposed to a state of suffering that diminishes his ability to provide self-care, as required by U.S.S.G. 1B1.13(b)(1)(B). This is supported by David's statement in his December 2025 letter in which he acknowledges that he has "been feeling okay" but would like to have some unspecified concerns looked into. *See* Doc. 686 at 1.

Without calling into question the legitimacy or severity of David's condition, at this time there is no evidence that the alleged lack of care has caused him to be at risk of death or serious deterioration. *See, e.g.*, *United States v. Daidone*, No. 02-cr-1584, 2022 WL 443778, at *2–4 (S.D.N.Y. Feb. 14, 2022) (finding that a 75-year-old defendant suffering from atrial fibrillation, hypertension, osteoarthritis of the knee, sciatica, and spinal stenosis did not rise to the level of extraordinary and compelling circumstances); *United States v. Castillo*, No. 03-cr-979, 2023 WL 2262881, at *3 (S.D.N.Y. Feb. 28, 2023) (finding that medical conditions did not constitute extraordinary and compelling

---

[1] The government also points out that David was previously scheduled for an appointment in June 2025, though it never occurred for reasons unexplained. However, David's timeline indicates that no appointment was ever re-scheduled between June 2025 and the time of filing in January 2026.

reasons for compassionate release where a 65-year-old defendant dealt with numerous serious medical issues including an enlarged prostate, heart disease, and eye problems).

Because David's concerns with his medical treatment at the halfway house do not satisfy either U.S.S.G. 1B1.13(b)(1)(B) or U.S.S.G. 1B1.13(b)(1)(C), he has not demonstrated an extraordinary or compelling reason for compassionate release.

### 2. HVAC Training Program

David seeks to enroll in an HVAC training program at the All-State Career school. Doc. 686 at 1; Doc. 690 at 1. However, because the classes do not begin until 5:30 p.m. and he is required to return to the halfway house by 6 p.m., he is unable to enroll in the program. *Id.* Terminating his sentence early, he argues, would allow him to enroll in the HVAC program. *Id.*

David's desire to enhance his employment prospects by attending the HVAC training program is commendable. However, a defendant's aspiration to take advantage of a laudable opportunity that begins before the termination of his custodial sentence is not an extraordinary and compelling circumstance. *See United States v. Lagone*, No. 10-cr-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (rejecting the argument that an extraordinary and compelling circumstance exists where early release would generally bolster the defendant's job prospects); *United States v. Prelaj*, No. 16-cr-55-1 (RJS), 2020 WL 3642029, at *2 (S.D.N.Y. July 6, 2020) (denying a motion for compassionate release where a defendant sought a sentence reduction in order to return to his job at his family's restaurant sooner than his initial sentence permitted).

David's request to enroll in the HVAC program falls into the catchall provision for "other reasons" not specifically addressed by U.S.S.G. 1B1.13(b). The "other reasons" include situations in which a "defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those

11

described in paragraphs (1) through (4)."  Enrolling in the HVAC program is not sufficiently similar in gravity to the other circumstances outlined in U.S.S.G. 1B1.13(b). David is currently employed and provides no indication that he will lose his job absent enrollment in the All-State Career school.  Rather, such attendance would merely supplement his wage-earning ability.  Though David's desire to enhance his trade and improve his capacity to generate income is a positive ambition, it is simply not "similar in gravity" to the other conditions discussed in U.S.S.G. 1B1.13(b).

For example, in order for the defendant's age to amount to an extraordinary and compelling circumstance, the defendant must be at least 65 years old, demonstrate serious deterioration in their health due to the aging process, and have served at least ten years or 75 percent of their sentence.  *See* U.S.S.G. 1B1.13(b)(2).  Similar severity is required for a defendant's family circumstances in order to meet the extraordinary and compelling standard.  To specify, a defendant would need to demonstrate the incapacitation of their parent or their spouse/partner, or the death or incapacitation of their minor or impaired child, where the defendant would be the sole caretaker for one of these incapacitated individuals.  *See* U.S.S.G. 1B1.13(b)(3).  Likewise, the medical status condition requires a terminal illness or similarly grave circumstance.  *See* U.S.S.G. 1B1.13(b)(1).  It is clear that David's inability to attend HVAC training does not constitute an extraordinary or compelling reason to reduce his sentence.

### C.  § 3553(a) Factors

David argues that his compliance with the mandates of the halfway house reflects his ability to successfully re-immerse himself into society without posing a threat to the community.  *See* Doc. 690 at 2.  Specifically, David notes that he has maintained employment with Noblemen Transportation LLC, where he works five days per week from 8 a.m. to 6 p.m.  Doc. 686 at 1.  David also states that he is subject to a breathalyzer test at least ten times each workweek as well as a weekly urinalysis test, all of which he

12

has passed without infraction. *Id.* David was granted permission to spend weekends at his home away from the halfway house, subject to random calls from the halfway house to confirm his whereabouts. *Id.* David asserts that he has complied with this condition without incident. *Id.* Because of this track record of compliance and demonstrated ability to positively interact with the public given the time at his job away from the halfway house, David argues that he has demonstrated a lack of danger to the community, warranting a reduction of his sentence. Doc. 690 at 1.

Specifically, David suggests that he is not a danger to the community in satisfaction of 18 U.S.C. § 3553(a)(2)(C), which requires the court to consider the need for the sentence "to protect the public from further crimes of the defendant."

David's adherence to the conditions of his supervision at the halfway house and successful interactions with the public at his place of employment are positive indicators of David's rehabilitation. *See* Doc. 690 at 1. However encouraging David's progress may be, his current risk to the community is not the only sentencing factor to be considered. The list of other factors enumerated in § 3553(a) requires consideration of the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; and to afford adequate deterrence.

The Court previously considered these additional § 3553(a) factors governing the sentence in this case in its August 2020 Opinion denying David's motion for compassionate release and again in its September 2024 Opinion denying David's motions for compassionate release and reconsideration. *See* Doc. 519, 658. The Court reiterates much of its prior discussion of the § 3553(a) factors here.

David's offense was undoubtedly serious. David engaged in repeated acts of violence, including multiple shootings, and assumed a leadership position in a violent gang. *David*, 2020 WL 4530302, at *4. Consistent with 18 U.S.C. § 3553(a)(2)(A), the

13

sentence for such severe crimes must be sufficient "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." David's 190-month sentence accomplishes these sentencing goals.

Additionally, "David's prior criminal convictions failed to deter him from continued unlawful conduct, as he was quick to reoffend following his sentences." *David*, 2020 WL 4530302, at *4. In sum, David engaged in serious, dangerous, and repeated crimes. Thus, his 190-month sentence is commensurate with his repeated violations of the law, and the § 3553(a) factors counsel against early release at this time.[2]

The § 3553(a) factors alone provide a sufficient basis to deny a motion for a sentence reduction. "Although a district court must conclude that a defendant satisfies all three predicates before granting a motion for compassionate release, it may deny compassionate release if a defendant fails to satisfy any of these grounds." *United States v. Ghertler*, No. 23-cr-100 (ER), 2024 WL 3666373, at *4 (S.D.N.Y. Aug. 5, 2024) (quoting *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022)).[3]

## IV.   CONCLUSION

Though David's recent compliance with the conditions of his halfway house and his successful employment demonstrate his progression towards re-entry into society, an overall review of the § 3553(a) factors weighs against a sentence reduction. Nonetheless, even if early release were consistent with the § 3553(a) factors, David has failed to exhaust his administrative remedies. Likewise, though the Court is concerned with the alleged deficiencies in David's medical care, his condition and treatment are also not sufficiently severe to satisfy the medical requirement for an extraordinary and compelling circumstance. *See* U.S.S.G. 1B1.13(b)(1)(B); U.S.S.G. 1B1.13(b)(C). David's motion

---

[2] According to the BOP, David has an anticipated release date of May 21, 2026. *See* Find an Inmate, BOP, https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited April 6, 2026).

[3] These three predicates include: (1) identifying an extraordinary and compelling reason for compassionate release; (2) determining whether a sentence reduction is compatible with the applicable policy statements; and (3) weighing the § 3553(a) factors. *Id.*

for compassionate release is thus DENIED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 686.

It is SO ORDERED.

Dated:    April 22, 2026
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

15